IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

EDWARD J. MOORE                                                                    PLAINTIFF


V.                              Civil No. 5:25-cv-05153-TLB-MEF


FRANK BISIGNANO, Commissioner,
Social Security Administration                                                    DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Edward Moore, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (the "Commissioner") denying his claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

### I.       Procedural Background

Plaintiff filed his application for DIB on May 17, 2021, alleging an onset date of October 22, 2018, due to post traumatic stress disorder ("PTSD"), anxiety, and depression. (ECF No. 9, pp. 81, 90, 195-200). An administrative hearing was held before Administrative Law Judge ("ALJ") Harold Davis in January 2023. (*Id*. at 40-80, 693-733). At the hearing, the Plaintiff amended his onset date to March 23, 2021. (*Id*. at 44).

On his date last insured, the Plaintiff was 49 years old. (ECF No. 9, p. 594). He possessed a high school education and a license to operate heavy machinery. (*Id.* at 631). The ALJ ultimately determined the Plaintiff had no past relevant work experience. (*Id*. at 594-595, 219-225, 258-263).

ALJ Davis entered an unfavorable decision on March 15, 2023. (ECF No. 9, p. 23-35, 605-662). On appeal to this Court, the Commissioner voluntarily remanded the case back to the Administration. (*Id*. at 676-685). Thereafter, the Appeals Council ("AC") remanded the case back to the ALJ for further consideration. (*Id*. at 676-685). ALJ Elizabeth McGee held a remand hearing on February 3, 2025. (*Id*. at 604-646). Plaintiff was present and represented by counsel, Meghan Gallo.

On March 24, 2025, ALJ McGee determined that the Plaintiff met the insured status requirements through December 31, 2023. (ECF No. 9, p. 582). She then identified generalized anxiety disorder ("GAD"), depression, post-traumatic stress disorder ("PTSD"), and attention deficit hyperactivity disorder ("ADHD") as severe impairments but concluded the Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*.). Despite Plaintiff's impairments, ALJ McGee found he retained the residual functional capacity ("RFC") to perform medium work, except he cannot drive as a part of work, and he can only perform work involving simple, routine, and repetitive tasks, usual work situations and routine work changes, and incidental social interaction. (*Id*. at 585). With the assistance of a vocational expert ("VE"), ALJ McGee determined Plaintiff could perform work as a night cleaner, hand packager, and kitchen helper. (*Id*. at 595).

The Appeals Council ("AC") denied Plaintiff's request for review on July 21, 2025. (ECF No. 9, pp. 7-12). Plaintiff subsequently filed this action on July 21, 2025. (ECF No. 2). Both parties have filed appeal briefs (ECF Nos. 13, 16, 17), and the matter is ready for Report and Recommendation.

## II.   Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014). If there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial

gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § 404.1520(a)(4). The fact finder only considers Plaintiff's age, education, and work experience in the light of his residual functional capacity if the final stage of the analysis is reached. 20 C.F.R. § 404.1520(a)(4)(v).

### III.    Discussion

Plaintiff raises three issues in this appeal: (1) whether the ALJ complied with the AC's remand order; (2) whether the ALJ erred at step two by failing to include Plaintiff's essential tremor as a severe impairment; and (3) whether the ALJ properly evaluated Plaintiff's subjective complaints. Following a thorough review of the record, the undersigned finds substantial evidence to support the ALJ's decision.

### 1.    Appeals Council's ("AC") Remand Order:

Following the administrative hearing held by ALJ Davis on January 11, 2023, the Plaintiff filed a post-submission brief attacking the credibility of the vocational expert ("VE"). (ECF No. 9, pp. 332-335). He argued that SkillTran, the program upon which the VE relied for job number data, was not reliable. In support of his position, Plaintiff attached a letter from Dr. Robert Eric Heidel, Associate Professor of Biostatistics in the Department of Surgery at the University of Tennessee Graduate School of Medicine, who concluded SkillTRAN's job-number methodology is statistically invalid. (*Id*. at 336-338).

On March 15, 2023, ALJ Davis entered an unfavorable decision. (ECF No. 9, pp. 23-35). On appeal to this Court, the Commissioner voluntarily remanded the case back to the Administration. (*Id*. at 676-685). Thereafter, the AC entered an Order finding as follows:

> The claimant's representative submitted a brief to the Administrative Law Judge objecting to the testimony of the vocational expert (Exhibit 18E). HALLEX 1-2-5-30 provides that the Administrative Law Judge will respond to any objections to the vocational expert raised by the claimant either in writing or on the record at the hearing. Here, the objections were raised after the hearing, but the Administrative Law Judge did not acknowledge, discuss, or rule on the objections in the decision.

(*Id*. at 689). The AC directed the ALJ to consider and rule on the objections and to obtain supplemental evidence from a VE to clarify the effect of the assessed limitations on the claimant's occupational base.

At the hearing on remand, VE Rache Hawkins ("Hawkins") testified that an individual of Plaintiff's age, education, and RFC could perform work as a night cleaner, hand packager, and kitchen helper. (ECF No. 9, p. 642). When asked to identify her data source or sources, she indicated her job number estimates were derived from SkillTRAN's Job Browser Pro. (*Id*.). Hawkins explained that SkillTRAN estimates job numbers by leveraging existing government data sources primarily from the Bureau of Labor Statistics and the Bureau of Census, which are compliant with Social Security policy definitions of exertion, skill, and education. (*Id*. at 643). As for whether SkillTRAN's estimation methodology has been empirically tested for validity and accuracy, the VE testified that she was a certified rehabilitation counselor, not a representative for SkillTRAN and referred counsel to SkillTRAN's developer for any questions concerning the specifics of SkillTRAN's products. (*Id*. at 644). However, in her professional experience, Hawkins opined that SkillTRAN provides a reliable product to estimate job numbers. (*Id*.).

5

In a post-submission brief, Plaintiff again argued that the job number data derived from SkillTRAN is unreliable and the DOT is obsolete.  (ECF No. 9-1, pp. 18-21).  In support of this argument, counsel included the statement of another statistician, Dean Barron, concluding that SkillTRAN's methodology is statistically invalid and incapable of producing reliable job numbers.  (*Id*. at 22-40).  Further, she cited to a Senate Permanent Subcommittee on Investigations' Minority Staff Report dated September 13, 2012, indicating that the Social Security Administration was in the process of replacing the outdated DOT with a new Occupational Information System to identify jobs open to claimants with disability.  (*Id*. at 18).  However, in the meantime, the report acknowledged that SSA decision-makers would continue to rely on the DOT.  (*Id*. at 19).

Counsel also took issue with the VE's qualifications, contending her inability to provide testimony regarding the statistical validity of SkillTRAN's methodology fails to satisfy the requirement that VE testimony be the product of well-accepted methodology and that the expert provide cogent and thorough answers.  *Biestek v. Berryhill*, 587 U.S. 97 (2019).  The ALJ disagreed.  In her opinion, ALJ McGee stated as follows:

> Subsequent to the initial hearing, the claimant's representative filed a post-trial brief objecting to the vocational expert's testimony— namely based on alleged unreliable job number data.  (See Exh. 18E).  Ms. Gallo similarly submitted a post-trial brief after the most recent hearing, also objecting to the vocational expert's testimony.  (See Exh. 28E).   The undersigned carefully considered the representative's multiple objections to the vocational expert testimony and overrules all the objections, finding that Ms. Gallo cited to no accurate or persuasive Social Security law, regulation, POMS, HALLEX, or acquiescence ruling to support any of the arguments she advanced.

(ECF No. 9, p. 579).  She further concluded that the VE identified the data upon which she relied and provided her general approach to estimating job numbers.

> Specifically, Ms. Hawkins stated that she relied upon SkillTRAN Job Browser Pro to estimate job numbers, and that SkillTRAN Job

6

> Browser Pro estimates these job numbers by leveraging existing government data sources (primarily from the Bureau of Labor Statistics and the Bureau of the Census). She also stated that it was her opinion, based on her professional experience, that SkillTRAN Job Browser Pro provides a reliable product to estimate job numbers. Finally, Ms. Hawkins specified that SkillTRAN Job Browser Pro relies on the same definitions of exertion, education, or skill level as those relied upon by the Social Security Administration and its regulations. (Hearing testimony).
>
> Based on the above information, the vocational expert's testimony is accepted in accordance with SSR 24-3p.

(*Id*. at pp. 595-596). Contrary to Plaintiff's argument, we find that these statements sufficiently address Plaintiff's objections. *See Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (citing *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) (an ALJ is not required to discuss every piece of evidence in the record)). Further, the Eighth Circuit has recognized that the Social Security Administration continues to treat the DOT as a reliable source of job data even though it was last updated in 1991. *See* 20 C.F.R. § 404.1566(d)(1); *Thomas v. Berryhill*, 881 F.3d 672, 678 (8th Cir. 2018); *Turner v. Saul*, 2019 WL 4246841, *4 (E.D. Mo. Sept. 6, 2019) (holding ALJ could rely on testimony of VE based upon information she obtained from SkillTran and her experience); *Prodes v. Astrue*, 2011 WL 903044, at *10 (Mar. 15, 2011) (the vocational expert's reliance on the DOT was not misplaced, even though the plaintiff presented a 2007 letter from the United States Department of Labor stating that the DOT was obsolete). And courts have approved the VE's use of private sources such as SkillTRAN for job number data. *Jordan v. Astrue*, 390 F. App'x 611, 611-12 (8th Cir. 2010) ("We ... reject [claimant's] various challenges to the privately published source of the VE's opinion on the numbers of available jobs."); *Postel v. Saul*, 2019 WL 4720990, *27 (N.D. Iowa Sept. 26, 2019) (recognizing Eighth Circuit's approval of SkillTRAN). The [VE] is only required to state [her] opinion as to the number of jobs available in the national

economy to a person with the applicant's [RFC], age, work experience, and education." *Whitehouse v. Sullivan*, 949 F.2d 1005, 1007 (8th Cir. 1991). The VE did this in the case at bar.

    **2.**        **Step Two Analysis**

In his second argument, the Plaintiff insists the ALJ erred in failing to include his essential tremor as a severe impairment. At Step Two, a claimant has the burden of providing evidence of functional limitations in support of his contention of disability. *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Id.* (citing *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987); 20 C.F.R. § 404.1521(a)). "If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two." *Id.* (citing *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007)).

Although a tremor was often listed in Plaintiff's reported symptoms (ECF No. 9, pp. 397-41, 424-439, 489-496, 549-556), a tremor in his hands was only noted on three occasions with primarily normal exams documented by his treatment providers. (*Id.* at 424-439, 555-556; ECF No. 9-1, pp. 563-566). On at least one of those occasions, the tremor was associated with sweaty palms and concern that he might not pass a drug test. (*Id.* at 555-556). Further, in June 2023, Plaintiff advised Nurse Practitioner Abby Rudolph that he had not recently experienced any tremors in his upper extremities. (ECF No. 9-1, pp. 589-591). He was, however, experiencing tremors in his neck. Nurse Rudolph diagnosed dystonic head tremor due to cervical dystonia, a treatable condition.

Additionally, despite his purported tremors, in May 2021, the Plaintiff advised Psychiatric-Mental Health Nurse Practitioner Ashlea Brewer he was planting trees and working on the creek. (ECF No. 9, pp. 406-409). He was fishing with his son and doing some work for his neighbor in

November 2021. (*Id*. at 454-457). And, in the Spring of 2022, the Plaintiff told Nurse Brewer he planned to do more fishing when the weather became warmer. (*Id*. at 444-46). Accordingly, the Court finds substantial evidence to support the ALJ's conclusion that Plaintiff's alleged tremors were not severe and did not require additional restrictions in the RFC.

### 3.    Subjective Complaint Analysis

Lastly, the Plaintiff claims the ALJ failed to properly consider his subjective complaints. The ALJ is required to consider all the evidence relating to Plaintiff's subject complaints, including: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitation and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). In so doing, the ALJ must also consider the claimant's prior work record, observations made by third parties, and the opinions of treating and examining physicians. *Polaski*, 739 F.2d at 1322.

An ALJ may not discount the Plaintiff's subjective complaints solely because the medical evidence fails to support them. *Id*. However, "[a]n ALJ . . . may disbelieve subjective reports because of inherent inconsistencies or other circumstances." *Wright v. Colvin*, 789 F.3d 847, 853 (8th Cir. 2015) (citing *Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007) (quotation and citation omitted). The Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

During the relevant period, the Plaintiff was treated for impairments to include PTSD, GAD, agoraphobia with panic attacks, ADHD, sleep disturbance, nightmares, short-term memory problems, and left hip pain. (ECF No. 9, pp. 397-417, 444-461, 477, 485-512; ECF No. 9-1, pp. 520-591). While it is true that he voiced numerous subjective complaints to include hypervigilance over his son's health, nightmares, anxiety, panic attacks with some agoraphobia, difficulty

9

interacting with others, irritability, and difficulty focusing, his symptoms were most prominent after he was arrested on four felony and three misdemeanor charges to include drug possession. (ECF No. 9, pp. 406-413, 424-439). He was ultimately sentenced to probation and his symptoms improved until a new probation officer forced him to discontinue the use of medical marijuana. (*Id*. at 410-413, 444-446, 558-562, 485-508; ECF No. 9-1, pp. 538-540, 544-548). *See Dunahoo v. Apfel*, 241 F.3d 1033, 1039-40 (8th Cir. 2001) (finding "intake notes support the ALJ's determination that the depression was due to her denial of food stamps and workers compensation and was situational"); *Merrell v. Berryhill*, 2018 WL 1916606, at *2 (E.D. Ark. Apr. 23, 2018) (finding "a situational component to [the claimant's] anxiety as he was oftentimes worried about his physical health and about meeting his child support obligations"). Even during those periods, his mental status exams revealed only a euthymic and mildly anxious mood, a normal affect, normal thought processes and thought content, and fair judgment and insight. (ECF No. 9, pp. 444-446, 485-488, 510-512). He consistently denied suicidal ideations, and agency physicians reviewing Plaintif's medical records concluded he could perform work where the interpersonal contact is incidental to work performed, the complexity of tasks is learned and performed by rote with few variables and little judgment, and the supervision required is simple, direct and concrete. (*Id*. at 83-86, 91-95).

As the ALJ noted, the Plaintiff was relatively active and engaged in household tasks and independent in his self-care. (ECF No. 9, p. 592). On his most recent adult function report, the Plaintiff reported caring for his son[1], pets, and his personal hygiene; going outside daily; performing some light chores around the house; mowing as needed; preparing simple meals; shopping in stores for necessities; watching television; reading the newspaper; and fishing. (*Id*. at

---

[1] Plaintiff's 17-year-old son is a type 1 diabetic.

10

274-281).  He described some difficulty driving and going out alone, but his treatment was conservative in nature, consisting of prescription medication, medical marijuana, and physical therapy.  *See Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (holding conservative treatment is inconsistent with disability).  He did not necessitate inpatient care at any point during the relevant period.  Further, the Plaintiff admitted that the medications prescribed were helpful.  (*Id.* at 381-385, 447-449, 458-461, 485-488, 497-501; ECF No. 9-1, pp. 549-557, 567-572, 583-585).  In fact, in April 2023, he was able to discontinue the Doxazosin, as he reported no nightmares. (ECF No. 9-1, pp. 554-597).  And he discontinued regular mental health treatment in 2023, a few months after his application for benefits was denied.  (ECF No. 9, p. 593; ECF No. 9-1, pp. 563-566, 579-588).  *See Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (failure of claimant to maintain a consistent treatment pattern for alleged mental impairments is inconsistent with the disabling nature of such impairments).

Moreover, the ALJ properly accounted for the Plaintiff's impairments in the RFC by concluding he could perform medium work, except he cannot drive as a part of work, and he can only perform work involving simple, routine, and repetitive tasks, usual work situations, routine work changes, and only incidental social interaction.  (ECF No. 9, p. 585).  Accordingly, we find substantial evidence to support the ALJ's credibility assessment.  *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019) (this court defers to ALJ's determinations regarding claimant's subjective complaints if they are supported by good reasons and substantial evidence).

### IV.    Conclusion

For the reasons and upon the authorities discussed above, it is RECOMMENDED that the ALJ's decision be affirmed, and that the Plaintiff's Complaint (ECF No. 2) be dismissed with prejudice.

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 28th day of May 2026.

/s/ Mark E. Ford

HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE