IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**EDWARD MOORE**                                                                                    **PLAINTIFF**

**V.**                                          **CASE NO. 5:25-CV-5153**

**FRANK BISIGNANO, Commissioner,**
**Social Security Administration**                                          **DEFENDANT**

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is the Report and Recommendation ("R&R") (Doc. 18) of the Honorable Mark E. Ford, United States Magistrate Judge for the Western District of Arkansas. The R&R recommends affirming the decision of the Commissioner of Social Security Administration ("SSA")—which denied Plaintiff Edward Moore a period of disability and disability insurance benefits ("DIB")—and dismissing Mr. Moore's complaint (Doc. 2) with prejudice. Mr. Moore filed objections to the R&R (Doc. 23), and SSA responded (Doc. 25). For the following reasons, the R&R is **ADOPTED IN FULL.**

## I.    BACKGROUND

Mr. Moore filed his claim for DIB on May 17, 2021, alleging that anxiety, post-traumatic stress disorder, and depression made him unable to work and/or function as of October 22, 2018. *See* Doc. 9, p. 81. His claim was denied initially and again on reconsideration, *id.* at p. 82, so Mr. Moore requested an administrative hearing. Mr. Moore's first administrative hearing was held before Administrative Law Judge ("ALJ") Harold Davis in January 2023. *Id.* at pp. 40–80, 693–733. Alongside the hearing came a small change to Mr. Moore's claim: he amended his onset date to March 23, 2021, so as to be consistent with the date he started receiving treatment for his symptoms. *Id.* at

1

p. 43.  The results, however, were the same—on March 15, 2023, ALJ Davis concluded that Mr. Moore was not disabled under the Social Security Act.  *Id.* at p. 35.

Mr. Moore then requested a review of ALJ Davis's decision in this Court.  *See Moore v. Commissioner*, No. 5:24-cv-5032 (W.D. Ark.).  Although the Commissioner initially opposed Mr. Moore's appeal, he changed tact and filed an unopposed motion for remand for further administrative action under "sentence four" of 42 U.S.C. § 405(g).  ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.").

On remand from this Court, the case went back to the SSA Appeals Council, which then remanded the case to an ALJ for further consideration of two issues, only one of which is relevant here.  The Appeals Council's concern was:

> "The claimant's representative submitted a brief to the Administrative Law Judge objecting to the testimony of the vocational expert (Exhibit 18E). HALLEX 1-2-5-30 provides that the Administrative Law Judge will respond to any objections to the vocational expert raised by the claimant either in writing or on the record at the hearing. *Here, the objections were raised after the hearing, but the Administrative Law Judge did not acknowledge, discuss, or rule on the objections in the decision.*"

Doc. 9, p. 689 (emphasis added).

The Appeals Council therefore ordered the ALJ to "[c]onsider and rule on the objections submitted by the claimant's representative in Exhibit 18E."  The ALJ was also directed to obtain supplemental evidence from a vocational expert to clarify the effect of Mr. Moore's assessed limitations on his occupational base (or, the jobs he can do in the national economy), to ask the vocational expert to identify examples of appropriate jobs and to state the incidence of those jobs in the national economy, and to resolve any

conflicts between the vocational expert's occupational evidence and information in the Dictionary of Occupational Titles ("DOT") and its companion publication, the Selected Characteristics of Occupations ("SCO"). *Id.*

A remand hearing was then held before ALJ Elizabeth McGee, *id.* at pp. 604–46, and she entered her decision on March 24, 2025. ALJ McGee determined that Mr. Moore met the requirements to remain insured under the Social Security Act through December 31, 2023. *Id.* at p. 580. She found Mr. Moore's severe impairments to include generalized anxiety disorder, depression, post-traumatic stress disorder, and attention-deficit hyperactivity disorder, but that none of the impairments met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at p. 582. ALJ McGee concluded that Mr. Moore retained the Residual Functional Capacity ("RFC") to perform "medium" work as defined in 20 C.F.R. § 404.1567(c) except that he could not drive as part of work. *Id.* at p. 585. She added that Mr. Moore could understand, remember, and carry out simple, routine, and repetitive tasks and also have occasional social interaction. *Id.* Ultimately, ALJ McGee found that Mr. Moore could work as a Night Cleaner, Hand Packer, or Kitchen Helper. *Id.* at p. 595.

Once again, Mr. Moore appealed. The Appeals Council denied Mr. Moore's request for review on July 21, 2025, *id.* at pp. 7–12, thus making it final, and Mr. Moore now seeks review of ALJ McGee's unfavorable decision, *see* Doc. 2.

## II.    LEGAL STANDARD

The Court reviews "the ALJ's denial of disability insurance benefits *de novo* to ensure that there was no legal error and that the findings of fact are supported by substantial evidence on the record as a whole." *Brown v. Colvin*, 825 F.3d 936, 939 (8th

Cir. 2016); *see also* 42 U.S.C. § 405(g). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted).

The Court must affirm the ALJ's decision if the record as a whole contains substantial evidence to support it. *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014) (internal quotations omitted). So long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the Court must affirm the ALJ's decision. *Id.*

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able, notwithstanding his disabilities, to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § 404.1520(a)(4). The fact finder only considers Plaintiff's age, education, and work experience in the light of his residual functional capacity if the final stage of the analysis is reached. 20 C.F.R. § 404.1520(a)(4)(v).

## III.    DISCUSSION

Mr. Moore argues three issues in his appeal brief: (1) the ALJ failed to comply with the Appeals Council's remand order, and rejected Mr. Moore's expert rebuttal evidence without reasoned analysis, which constitutes legal error; (2) the ALJ erred by not finding Mr. Moore's essential tremor to be a severe impairment.; and (3) the ALJ failed to properly consider Mr. Moore's subjective complaints.  (Doc. 13).  The Court addresses each issue in turn.

### A. Step-Five Determination

Mr. Moore first argues that ALJ McGee failed to comply with the Appeals Council's remand order by insufficiently discussing his rebuttal evidence, which attacked the credibility of the vocational expert ("VE") and the methodology that SkillTRAN, a product used by VEs, uses to estimate job numbers.  (Doc. 9, pp. 332—363; Doc. 9-1, pp. 18–

5

509).  He takes issue with the VE's testimony at the February 3, 2025 hearing, during which she noted that she "is not an expert in the field of statistics," and, with respect to SkillTRAN's methodology, that she "[is] not a representative for SkillTRAN" and "any criteria regarding specifics of SkillTRAN's products would have to be directed to [SkillTRAN]." *See* Doc. 13, p. 5; Doc. 9, p. 644.  But she also explained that in her experience as a certified rehabilitation counselor, "SkillTRAN provides a reliable product to estimate job numbers." *Id*.  Mr. Moore also objects to the way the ALJ weighed the VE's testimony against the evidence in his post-submission brief.  ALJ McGee "considered the representative's multiple objections to the vocational expert testimony" and "overrule[d] all the objections," finding that "Ms. Gallo [Moore's attorney] cited to no accurate or persuasive Social Security law, regulation, POMS, HALLEX, or acquiescence ruling to support any of the arguments she advanced." (Doc. 9, p. 579).

To Mr. Moore, this constitutes legal error.  He reads *Biestek*, 587 U.S. at 109, to stand for the categorical rule that a VE's testimony may not constitute substantial evidence if the expert does not answer questions about the methodology underlying her job-number estimates and argues that no reasonable mind could have accepted her testimony as substantial evidence given the methodological concerns.  To turn this evidentiary dispute into a legal error, Mr. Moore claims that the ALJ's failure to discuss the methodological issues at length in her opinion constitutes a due process violation, is arbitrary and capricious, and violated the remand order.  But this misreads *Biestek*, which was careful to avoid pronouncing any categorical rule about when a VE's testimony might

6

clear the substantial evidence bar—"[t]he inquiry, as is usually true in determining the substantiality of evidence, is case-by-case." 587 U.S. at 108.

And *Biestek* was clear in announcing its case-by-case rule that the bar is not high. *Biestek* itself held that a VE's failure to produce the private market-survey data that their opinion relied upon on the applicant's request (something like the procedure in Fed. R. Civ. Proc. 26(a)(2)(B)) does not preclude a VE's testimony from being substantial evidence. *Id.* at 104. Instead, the ALJ considers and weighs all relevant factors about a witness's testimony, and other indicia of reliability can bring otherwise deficient testimony up to the bar. *Id.* at 108. So if a witness's failure to produce *any* supporting data about job availability is not a categorical bar, why would an expert's inability to discuss the methods of their data source be one? Under *Biestek*, it wouldn't—instead, the correct rule is to "take[ ] into account all features of the vocational expert's testimony, as well as the rest of the administrative record." *Id.* "And in so doing, [the Court] defers to the presiding ALJ, who has seen the hearing up close." *Id.* The few lines from *Biestek* that Mr. Moore seizes on might have served to undermine the VE's testimony in the eyes of the ALJ, but they are only a few of many factors that the ALJ may permissibly weigh in deciding whether a VE's testimony is substantial evidence.

Here, as Magistrate Judge Ford concluded, the ALJ found (and the Court agrees) that Mr. Moore's counsel cited no accurate or persuasive law or SSA rule or regulation that would preclude a finding that the VE's testimony was reliable. (Doc. 9, p. 579). The ALJ thus credited the VE's testimony, based in part on the VE's professional experience and the job-number estimate's consistency with SSSA regulations. Under the deferential

7

standard this Court applies to reviewing ALJ findings, this is enough. As such, Mr. Moore's first objection is **OVERRULED**.

### B. Step Two Analysis

Next, Mr. Moore argues that ALJ McGee erred by not finding his essential tremor to be a severe impairment (as ALJ Davis had). Additionally, Mr. Moore argues that even accepting the ALJ's determination that his essential tremor was a medically determinable impairment rather than a severe one, the ALJ still ought to have imposed manipulative limitations or other functional limitations. As discussed below, though, this is a distinction without a difference.

At step two, a claimant has the burden of providing evidence of functional limitations in support of his contention of disability. *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Id.* (citing *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987); 20 C.F.R. § 404.1521(a)). "If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two." *Id.* (citing *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007)).

The Court again agrees with the R&R. The medical record before the ALJ was inconsistent as to the tremor's severity. Mr. Moore's attorney represented during questioning (although they were not visible to the ALJ) that his hands were shaking during questioning. *See* Doc. 9, p. 614. But there was evidence to the contrary, too. For example, during a doctor's visit, Mr. Moore reported tremors but appeared to claim that they were related to medical marijuana withdrawals. *Id.* at p. 555. His performance was

average and not impaired when the psychomotor speed, manual dexterity, and strength of his hands were tested. *Id.* at p. 449. In June 2023, he reported experiencing neck tremors, but stated that he had not had any in his arms or legs recently. (Doc. 9-1, p. 589). And at various times throughout 2021 and 2022, he reported engaging in activities like planting trees, (Doc. 9, pp. 406–409), and fishing, *id.* at pp. 444–46, 454–57.

Given this evidence, there was substantial evidence in the record to support the ALJ's conclusion that Mr. Moore's tremors were not severe and did not require additional manipulative restrictions. "Whether the ALJ should have provided *additional* limitations amounts to a disagreement over the weighing of evidence within the record, and 'it is not this Court's role to reweight that evidence." *Austin v. Kijakazi*, 52 F.4th 723 (8th Cir. 2022) (citation omitted). Mr. Moore's second objection is **OVERRULED**.

### C. Subjective Complaint Analysis

Mr. Moore's last argument is that ALJ McGee failed to properly consider his subjective complaints. Specifically, he claims that the ALJ relied on "cherry-picked and manipulated statements to support his unfavorable decision" and to "manufacture inconsistency" in Mr. Moore's testimony. *See* Doc. 13, p. 14. In his objections to the R&R, he states that the R&R did not address the particulars of his argument—namely, that the ALJ should have weighed differently one earlier function report against a later one to show Mr. Moore's deterioration. He also states that the R&R provides rationales for the decision that the ALJ did not herself offer.

The ALJ was required to consider all evidence relating to Mr. Moore's subjective complaints, including: (1) Mr. Moore's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitation and aggravating factors; (4) dosage, effectiveness,

and side effects of his medication; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). Further, if the ALJ rejects a claimant's testimony, she must make an express credibility determination detailing her reasons for discrediting the testimony. *Prince v. Bowen*, 894 F.2d 283, 286 (8th Cir. 1990).

ALJ McGee did these things. She considered Mr. Moore's subjective complaints alongside the medical evidence and ultimately found his credibility to be wanting, noting the internal inconsistency in his complaints and also their inconsistency with the medical records. (Doc. 9, pp. 592–93). Mr. Moore's argument on appeal and his objections to the R&R amount to no more than a desire that the evidence be weighed differently in deciding his claim. Because the Court "may not reverse simply because [it] would have reached a different conclusion than the ALJ or because substantial evidence supports a contrary conclusion," *Miller*, 784 F.3d at 477, Mr. Moore's third objection to the R&R is **OVERRULED**.

## IV.    CONCLUSION

**IT IS THEREFORE ORDERED** that Mr. Moore's Objections are **OVERRULED**, the Magistrate Judge's R&R (Doc. 18) is **ADOPTED**, and the ALJ's decision to deny Mr. Moore benefits is **AFFIRMED**. Mr. Moore's case is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED** on this 22ᵈ day of July, 2026.

_____
TIMOTHY L. BROOKS
CHIEF UNITED STATES DISTRICT JUDGE